1  RICHARD R. WAITE (SBN 97942)
   MARY M. BEST (SBN 110220)
2  **KEENEY WAITE & STEVENS**
   A Professional Corporation
3  125 North Acacia Avenue, Suite 101
   Solana Beach, CA 92075
4  Telephone:    (858) 523-2130
   Facsimile:    (858) 523-2135
5
   Attorneys for Plaintiff REID JILEK
6

7

8                    **UNITED STATES DISTRICT COURT**

9                  **SOUTHERN DISTRICT OF CALIFORNIA**

10 REID JILEK, an individual,              )  Case No. 08 CV 0658 IEG WMc
                                           )
11              Plaintiff,                  )  **REID JILEK'S MEMORANDUM OF**
                                           )  **POINTS AND AUTHORITIES IN**
12 v.                                       )  **SUPPORT OF HIS MOTION TO**
                                           )  **DISQUALIFY DEFENDANT'S**
13 EPITOME PHARMACEUTICALS               )  **ATTORNEYS**
   LIMITED, a Nova Scotia limited          )
14 corporation,                            )  Date:  July 14, 2008
                                           )  Time:  10:30 a.m.
15              Defendant.                 )  Courtroom: #1, 4th Floor
                                           )  Hon. Irma Gonzalez
16                                          )  Trial:  None Set
                                           )
17 _____)

18      Plaintiff REID JILEK presents the following memorandum of points and authorities in

19 support of his motion to disqualify Defendant's attorneys.

20                              **BACKGROUND**

21      In 1977 JILEK signed a contract (the "Contract") prepared by Defendant EPITOME.  It is

22 attached to JILEK's complaint as Exhibit A and is attached as Exhibit A to the JILEK declaration

23 filed with this motion.  Some time in 1997, JILEK discovered that EPITOME had secured a

24 licensing partner.  Under the Contract, EPITOME was supposed to inform any of its potential

25 partners about JILEK'S entitlement to 5% of EPITOME royalties.

26      EPITOME refused to tell JILEK the identity of its new licensing partner.  JILEK felt the only

27 way to discover the new partner's identity was to send letters to various European pharmaceutical

28 companies and inquire whether they had agreements with EPITOME.

                                    1

1    At this same time, JILEK was introduced to attorney Matt Kirmayer through two different

2    acquaintances -- Alan Glick and Harris Brotman.  JILEK met with Kirmayer and one of Kirmayer's

3    associates at the Gray Cary offices in San Diego.  They reviewed  and discussed his Contract; he

4    requested and received legal advice regarding his Contract.  He also showed them the letter he

5    proposed to send to the German pharmaceutical companies.  He sought and received legal advice

6    from them regarding the language of the proposed letter. (The proposed letter is attached to the

7    JILEK declaration as Exhibit C).  He received Kirmayer's business card at the meeting (Ex. B to

8    JILEK declaration).  JILEK ultimately did not retain Kirmayer on this matter but used another law

9    firm.

10    Kirmayer's law firm (Gray Cary Ware & Freidenrich LLP) was subsequently merged or

11    acquired by EPITOME's current counsel DLA Piper.  Although Kirmayer is not currently employed

12    by DLA Piper, JILEK has no assurances that his confidences were not discussed by other attorneys

13    who remain at DLA Piper.   Shortly after DLA Piper appeared in this matter, JILEK'S counsel told

14    them of the conflict and requested that they voluntarily disqualify themselves from this case;

15    although they gave no reason for doing so, they refused.

16    **LEGAL ANALYSIS**

17    1.    **Possession of Confidential Information is Conclusively Presumed When the Previous**
18       **Representation Bears A Substantial Relationship to Current Representation**

19    Rule 3-310(E) of the California Rules of Professional Conduct states in pertinent part:

20        A member shall not, without the informed consent of the client or
21        former client, accept employment adverse to the client or former client
        where, by reason of the representation of the client or former client,
22        the member has obtained confidential information material to the
        employment.

23    Business & Professions Code § 6068(e) states in pertinent part:

24        It is the duty of an attorney to do all of the following:
25        . . .

26        (e)  To maintain inviolate the confidence, and at every peril to
27        himself or herself to preserve the secrets, of his or her client.

28

1    It is conclusively presumed that counsel possesses confidential information when there exists

2  a "substantial relationship" between the current and former representation and confidential

3  information material to the current dispute would normally have been imparted to counsel.  *Western*

4  *Continental Operating Co. v. Natural Gas Corp.* (1989) 212 Cal. App. 3d 752, 760; *Elliott v.*

5  *McFarland Unified School Dist.* (1985) 165 Cal.App.3d 562, 568-569;  *Global Van Lines, Inc. v.*

6  *Superior Court* (1983) 144 Cal.App.3d 483, 489.

7    In the recent case of *Knight v. Ferguson* (2007) 149 Cal.App.4[th] 1207, 1213-1214, the

8  defendants (Fergusons) appealed an order granting plaintiff's motion to disqualify defendants'

9  attorney, Wideman.  Plaintiff had previously consulted with Wideman about forming a partnership

10  and entering into a commercial lease to establish a new restaurant.  The present litigation arose from

11  that business venture.  In affirming the order,  the Court of Appeal rejected each of Fergusons'

12  arguments.  Fergusons contended there was no substantial relationship between Wideman's

13  representation of Knight and the current case which concerned different issues.  The court rejected

14  that argument stating that the substantial relationship test was broad and not limited to the "strict

15  facts, claims, and issues involved in a particular action. *Id.* at 1214.  "[A] 'substantial relationship'

16  exists whenever the 'subjects' of the prior and the current representations are linked in some rational

17  manner.  That is the case here." *Id.* at 1214.

18    The Fergusons also claimed that there was no proof that Wideman obtained confidential

19  information.  The court indicated that the "aggrieved client" need only satisfy a "low threshold of

20  proof" and does not have to prove the attorney actually received confidential information.  "Where a

21  substantial relationship is shown between the prior representation and the present case, (1) it is

22  presumed the attorney received confidential information [citations omitted] and (2) the attorney's

23  disqualification 'is mandatory'." [citations omitted] *Id.* at 1215.

24

25    In the matter before this Court, we not only have a "substantial relationship"  but we have the

26  exact same matter upon which JILEK sought and received legal advice -- his contract with

27  EPITOME.  This litigation ensued when EPITOME, after years of indicating it would honor its

28  contract with JILEK, declared its intention to repudiate the contract.  JILEK and attorney Kirmayer

1  and his associate went over the terms of this same contract; JILEK sought and received their advice

2  about the enforceability of this same contract.  Now this same contract is being repudiated and the

3  repudiation is being defended by the successor law firm that gave JILEK advice on its enforceability.

4  DLA Piper should be disqualified.

5  **2.     Prior Representation Does Not Require Formal Attorney-Client Relationship**

6       JILEK readily admits that he hired another law firm to represent him in further negotiations

7  with EPITOME after his consultation with Kirmayer, and that he never formally retained Kirmayer.

8  The fact that Kirmayer was not formally retained, however, is irrelevant.  The primary consideration

9  on a motion to disqualify is the protection of the moving party's reasonable expectation of

10 confidentiality.  In *Pound v. DeMera* (2005) 135 Cal.App.4th 70, 76-79, defendants interviewed

11 attorney Bradley as possible counsel to represent them in litigation with plaintiffs.  In the course of

12 that interview Bradley received confidential information from defendants.  Defendants ultimately

13 hired someone else as their attorney in the dispute.  Three years later counsel for plaintiffs associated

14 Bradley into the case as co-counsel.  This triggered the disqualification of Bradley and plaintiffs'

15 original counsel even though there was no evidence co-counsel shared defendants' confidential

16 information with plaintiffs' original attorney.  As to the disqualification of plaintiffs' original

17 attorney, the Court of Appeal stated that although this was a case of first impression it had no

18 "conceptual difficulties" resolving it.  The court's reasoning was as follows:

19
20       In each situation it is the attorney's duties of loyalty and confidentiality
         to his client that are implicated. 'Attorneys have a duty to maintain
21       undivided loyalty to their clients to avoid undermining public
         confidence in the legal profession and the judicial process. [Citation.]
22       The effective functioning of the fiduciary relationship between
         attorney and client depends on the client's trust and confidence in
23       counsel. [Citation.]  The courts will protect clients' legitimate
         expectations of loyalty to preserve this essential basis for trust and
24       security in the attorney-client relationship. [Citation.]" *People ex rel.
         Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20
25       Cal. 4th at pp. 1146-1147.

26       State Bar Rules of Professional Conduct, rule 3-310 is designed to
         protect a client's confidences. This rule prohibits attorneys from
27       accepting employment adverse to a client or former client if by reason
         of the representation the attorney obtained confidential information
28       material to the employment, unless the former client provides an

4

informed written consent. (Rules Prof. Conduct, rule 3-310(E).) The purpose of the rule is to protect the confidential relationship which exists between attorney and client, a relationship which continues after the formal relationship ends. [Citation.] The fiduciary nature of that relationship requires the application of strict standards. [Citation.]' *Henriksen v. Great American Savings & Loan* (1992) 11 Cal.App.4th at p.113.

Disqualification is required to protect the client's confidences. Where an attorney successively represents clients with adverse interests, and where the subjects of the two representations are substantially related, the need to protect the first client's confidential information requires that the attorney be disqualified from the second representation. For the same reason, a presumption that an attorney has access to privileged and confidential matters relevant to a subsequent representation extends the attorney's disqualification vicariously to the attorney's entire firm. *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra*, 20 Cal. 4th at p. 1146.

The fact that JILEK did not ultimately retain Kirmayer is of no importance. He made disclosures to them which he expected to remain confidential on the matter that is now the subject of this lawsuit. Because Kirmayer and his associate were with Gray, Carey, Ware & Freidenrich at the time of the consultation, and Gray, Carey has now become DLA Piper, the entire law firm must be disqualified as EPITOME's attorneys in this matter.

3. **The Entire Law Firm Must Be Disqualified Because a Member of the Firm Previously Represented the Moving Party in this Current Matter.**

JILEK has no facts as to how long Kirmayer stayed with Gray, Cary, Ware & Freidenrich, LLP, or whether his associate may still by employed by DLA Piper. He does know, however, that he disclosed information to them, which information he expected to remain confidential, on exactly the same contract which is now the subject of this litigation.

Although Kirmayer has departed from his former firm, confidences are conclusively presumed to have been shared by the departed lawyer with members of the former firm. *Elan Transdermal Ltd. V. Cygnus Therapeutic Systems* 809 F: Supp. 1383, 1389-1391(N.D. CA 1992); *Asyst Technologies, Inc. v. Empak, Inc.* 962 F. Supp. 1241, 1243 (N.D. CA 1997).

In *Asyst Technologies,* the defendant's law firm argued that the attorney that created the conflict of interest was no longer employed by the firm and therefore the plaintiff's disqualification

1  motion was moot. The court replied to that argument as follows: "I fail to see how a tainted firm is

2  cleansed by the departure of one of the attorneys who created the taint." Id. at fn. 3 1243.

3      There is no way for JILEK to know who was privy to the information he shared with

4  Kirmayer or his associate.   He need not prove actual misuse of confidential information because

5  requiring such proof would by itself require the disclosure of the confidential information. *Atasi*

6  *Corp. v .Seagate Technology* 847 F. 2d 826, 829 (Fed. Cir. 1988).

7      In  *I-Enterprise Company LLC v. Draper Fisher Jurvetson Management Company V,LLC.*

8  (2005 U.S. Dist. LEXIS 45190) the defendant sought to disqualify DLA Piper based on the fact that

9  attorney Young had formerly billed one-half hour at his prior firm in a matter substantially related to

10  the current litigation. Despite the fact that Young declared he had "no recollection of any matters

11  relating [to] the captioned litigation" and "no recollection of being involved in any way in any

12  matter relating to the plaintiff identified in the caption," the court disqualified the entire new firm of

13  DLA Piper. The same result is compelled in this matter. .

14      This litigation is in its infancy. The issue of disqualification has been brought to Defendant's

15  attention as soon as it was discovered and is not brought in order to seek any type of advantage.

16  JILEK desires to move ahead with this litigation and was hopeful that DLA Piper would voluntarily

17  recuse itself without the necessity of a formal motion. In refusing to voluntarily disqualify itself,

18  DLA Piper gave no factual or legal reasons for its failure to do so, necessitating this motion.

19                          **CONCLUSION**

20      On the facts of this matter there is no dispute that not only is there a "substantial

21  relationship" between the past and present matter but that it is the exact same matter. The possession

22  of confidential information by DLA Piper is presumed. DLA Piper should be disqualified from

23  representing Defendant EPITOME in this matter.

24

25

26

27

28

MEMO OF POINTS AND AUTHORITIES RE: MOTION TO DISQUALIFY DEFENDANT'S ATTORNEYS
CASE NO. 08 CV 0658 IEG WMc

1  Dated:     May 28, 2008              **KEENEY WAITE & STEVENS**
2                                       A Professional Corporation
3
                                        By:  _Mary Best_____
4                                            Richard R. Waite
                                             Mary M. Best
5                                            Attorneys for Plaintiff REID JILEK
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMO OF POINTS AND AUTHORITIES RE: MOTION TO DISQUALIFY DEFENDANT'S ATTORNEYS
                                       CASE NO. 08 CV 0658 IEG WMc